### ARKANSAS DEPARTMENT OF HUMAN SERVICES
### *v.* STATE of Arkansas

94-213                                      885 S.W.2d 14

Supreme Court of Arkansas
Opinion delivered October 17, 1994
[Petition for Rehearing Declared Moot November 21, 1994.]

*Elizabeth McGee*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Dinah M. Dale*, Asst. Att'y Gen., for appellee.

JACK HOLT, JR., Chief Justice. A single point for reversal is raised by appellant Arkansas Department of Human Services (DHS) from a decision by the Pulaski County Chancery Court Juvenile Division placing a juvenile in DHS custody. On appeal, DHS argues that the placement with the agency was improper in that the chancellor failed to comply with the requirements of Ark. Code Ann. § 9-27-328(a)(2) (Repl. 1993) by neglecting to make specific findings of fact that family services

were made available before removal of the juvenile. It is unnecessary, however, for us to address this issue because the matter is moot. DHS seeks what amounts to an advisory opinion, but we neither issue advisory opinions nor decide moot cases. *See Arkansas Department of Human Services* v. *M.D.M. Corp.*, 295 Ark. 549, 750 S.W.2d 57 (1988).

## Facts

A.R., a fifteen-year-old male, was charged with possession of cocaine on June 4, 1993. A detention hearing was held on June 8, 1993, at which the Pulaski County deputy prosecutor filed a petition requesting that the youth be adjudicated a delinquent and praying for a court-ordered disposition consistent with the best interests of the juvenile and society. Neither A.R.'s mother, who was his legal guardian, nor his grandmother, with whom he was living, appeared at the hearing. Timothy A. Boozer, a deputy public defender, was appointed to represent A.R., who was present, and stipulated to probable cause.

On June 22, 1993, a plea and adjudication hearing was held, with A.R. and his grandmother present. A.R. entered a plea of no contest, waiving his right to trial. The chancellor found that the juvenile had voluntarily entered the plea and that his grandmother understood the nature of the charge and the consequences of her grandson's decision. The court received testimony from the grandmother and ordered A.R. released to her custody alone. Various conditions were set, including a drug and alcohol assessment.

Subsequently, on July 30, 1993, the prosecutor's office filed a petition for revocation of probation on the grounds that A.R. had "failed to stay with his guardian" and had "failed to report to his Probation Officer each week." A.R. and his grandmother were served with a summons on August 3, 1993, to appear at a hearing set for October 13, 1993. The chancellor signed a pickup order on August 4, 1993, for A.R. to be placed in detention.

The revocation hearing on October 13, 1993, also involved a plea on a new charge of second-degree battery and interference with a law-enforcement officer. Because his grandmother could not be present due to a leg amputation, A.R.'s sister appeared with him. The two were served with copies of the revocation

petition at that time. The sister was made a party defendant, A.R. was released to the joint custody of the sister and the grandmother, with orders for "24-hour-a-day adult supervision."

On October 18, 1993, A.R. was placed in detention after testing positive for cocaine. A hearing was held on October 26, 1993, on the petition for revocation of probation on the possession charge. In addition, the battery and interference charges were to be adjudicated. The battery charge was reduced to third-degree, and the deputy public defender, waiving the presence of parent or custodian, admitted to the revocation, the amended battery charge, and the interference charge. Another hearing was set for November 3, 1993. A show-cause order was served on the sister on November 2, 1993, for her failure to appear at the October 26 hearing.

At the hearing on November 3, 1994, neither the grandmother, who apparently was still incapacitated, nor the sister, who was in her ninth month of pregnancy and at the doctor's office, was present. Two DHS representatives, Elisabeth McGee and Lavona Wilson, were called into the courtroom at the request of the deputy public defender.

At that time, A.R.'s probation officer testified that a bed had been secured for A.R. at the Riverbend treatment center but that no parent or legal guardian was available to sign him over to the program. The court then ordered the youth placed in DHS custody for the purpose of his obtaining treatment at Riverbend and receiving aftercare. Ms. McGee objected to placement with DHS on the basis that findings of fact had not been made pursuant to Ark. Code Ann. § 9-27-328. The chancellor found, nevertheless, that, in order to expedite treatment, it was necessary to place A.R. in DHS custody and entered a formal order in that regard. The Pulaski County Juvenile Detention Center was ordered to transport the youth to Riverbend and to detain him until November 24, 1993, when a disposition hearing was scheduled.

At the disposition hearing on November 24, 1993, A.R.'s mother, who resided in Hughes, Arkansas, appeared and stated her willingness to become a party defendant and to take custody of her son. A.R. was placed on indefinite probation, and the chancellor transferred jurisdiction of the case to the First Judicial

District Juvenile Division. Ms. Wilson was present on behalf of DHS, but the record does not reflect that she was called upon by the court or that she offered any objection to the disposition of the matter.

*Mootness*

Because A.R.'s mother appeared at the November 24, 1993, hearing and agreed to submit to the juvenile division's authority as a party defendant, assuming custody of and responsibility for her son, the question of DHS involvement was rendered moot. In her order of November 3, 1993, the chancellor had placed the youth in DHS custody for the express purpose of obtaining treatment and receiving aftercare. By the time of the disposition hearing on November 24, 1993, the period of treatment had obviously terminated. Moreover, at that hearing, the chancellor released A.R. to his mother's custody and transferred jurisdiction of the case to the judicial district in which she resided.

Although the chancellor entered no formal order relieving DHS of custody, the order releasing the youth to his mother, adding her as a party defendant, and relinquishing jurisdiction effectively absolved DHS of further responsibility in the case. Under these circumstances, then, this appeal is unreviewable.

As we held in *Mastin v. Mastin*, 316 Ark. 327, 329, 871 S.W.2d 585, 586 (1994):

> Mootness may not determine whether we review a case which involves the public interest, or tends to become moot before litigation can run its course, or in which a decision might avert future litigation. ... Most cases become moot due to events which transpire in the course of litigation. . . . *When, however, mootness is the result of the complaining litigant receiving from the Trial Court the relief requested, we are not inclined to review the matter.*

(Emphasis added.) Here, before notice of appeal was filed, custody of A.R. was removed from DHS, which thereby received, at the hands of the chancellor, the ultimate relief it sought.

Appeal dismissed.